(77 Hun, 472.)

ALGASE v. HORSE OWNERS' MUT. INDEMNITY ASS'N OF ROCHESTER.

(Supreme Court, General Term, Fourth Department.   May 18, 1894.)

1. EVIDENCE—PLEADING OF ADVERSE PARTY.
   A party who gives in evidence a portion of his adversary's pleadings is not thereby estopped to question the residue of such pleadings.

2. INSURANCE—ACTION BY ASSIGNEE OF POLICY.
   Where an insurance policy on a horse was assigned by the owner to plaintiff to secure a debt, and the horse was killed by a locomotive, a settlement between the owner and the railroad company does not preclude plaintiff from recovering on the policy against the insurance company.

Appeal from judgment on report of referee.

Action by Levi M. Algase against the Horse Owners' Mutual Indemnity Association of Rochester, N. Y.   From a judgment for $56.65 damages and for costs, and declaring "that the defendant is entitled to be subrogated to all the rights of the said plaintiff on his said claim against John T. Brooks, including any security which he may hold against said Brooks," defendant appeals.   Affirmed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

Babcock, Sperry & Van Cleve, for appellant.
W. D. Edmister, for respondent.

HARDIN, P. J.   On the 16th day of June, 1891, the defendant issued a policy of insurance or indemnity to John T. Brooks, upon his horse, wherein the defendant agreed, "upon receiving satisfactory proofs of the death of said animal by disease, accident, or broken leg, to pay to the said insured, executors, administrators, or assigns, the sum of one hundred dollars, from its mortuary fund, within sixty days after the approval of the claim by its executive board." It was averred in the complaint, and proven on the trial, that on the 13th day of August, 1891, Brooks, by a written indorsement upon the certificate, transferred and assigned to the plaintiff all his "right, title, and interest in said certificate, and to all advantages to be derived therefrom," which assignment was in writing, and bears date the 13th day of August, 1891, and was executed in the presence of a witness, and thereafter, on the 15th day of August, 1891, the assignment was approved by Elsbree, the general manager of the defendant.   It is averred in the complaint that the plaintiff became the owner and holder of the certificate. The answer of the defendant alleges "that at the time of said alleged indorsement upon said certificate the said plaintiff in this action loaned to the said John T. Brooks the sum of fifty dollars; that as security for the said loan the said John T. Brooks executed and gave a chattel mortgage or bill of sale of or upon said horse mentioned in said certificate, and upon other property, to the said Levi M. Algase, for the purpose of securing the payment to the said Levi M. Algase of said loan of fifty dollars; that, for the purpose of further securing the said Algase for said loan, said alleged assignment of said certificate was made; that said consent given by defendant to said indorsement upon said certificate was so given for the purpose and to the extent only of permitting said insurance or certificate or indemnity to continue upon said insured property after the giving of such chattel mortgage or bill of sale, and for no other purpose was such consent given." When the hearing commenced before the referee, the defendant's counsel moved to dismiss the complaint on the ground that "it does not state facts sufficient to constitute a cause of action." The motion was denied, and an exception was taken.

It is to be observed that the defendant, in its motion, in no way pointed out any specific defect in the complaint; and we are of the opinion that, considering the allegations of the complaint in connection with the allegations found in the answer, it appeared that a sufficient cause of action was stated, and therefore the motion was properly overruled.   In Olmstead v. Keyes, 85 N. Y. 598, it was said:

"A life insurance is not, like fire insurance, a contract of indemnity, but a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of a certain annuity for his life.  *  *  * Like every other contract to pay money, such a policy is a chose in action, with all the ordinary incidents of every other chose in action."

Upon the hearing before the referee the plaintiff offered in evidence that portion of the defendant's answer which alleged "that at the time of said alleged indorsement upon said certificate

the said plaintiff in this action loaned to the said John T. Brooks the sum of fifty dollars; that as security for the said loan the said John T. Brooks executed and gave a chattel mortgage or bill of sale of or upon the horse mentioned in said certificate." The defendant objected to the admission of the answer in evidence. The objection was overruled, and the defendant took an exception. In Mott v. Ice Co., 73 N. Y. 543, it was held:

"Where a party gives in evidence an admission in the pleading of his adversary, he is not estopped from questioning a portion thereof which is against him. He is at liberty to use the admission so far as it makes in his favor, and to disprove the residue."

In Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701, it was held:

"Statements, admissions, and allegations in pleadings are always in evidence for all the purposes of the trial. They are before the court and jury, and may be used for any legitimate purpose."

In the course of the opinion, it was said:

"They are made for the purpose of the trial, and are before the court and jury, and may be used for any legitimate purpose."

Our attention is called to Quinn v. Neeson (Super. Buff.) 21 N. Y. Supp. 106, by the appellant; but the case does not aid its contention, because it appears in the opinion that "it was expressly charged that the answer might be considered by the jury as evidence in the case," although it had not been offered in evidence. We are of the opinion that no error was committed by the referee in receiving that portion of the answer of the defendant in evidence which was offered at the hearing, nor in overruling the defendant's motion to dismiss the complaint on the ground stated. Williams v. Insurance Co., 9 How. Pr. 365; Peabody v. Insurance Co., 20 Barb. 341; Fowler v. Insurance Co., 26 N. Y. 422,—are not applicable to the case before us, as they were cases where the question presented to the court arose upon demurrers.

2. We are of the opinion that no error was committed in receiving evidence that the plaintiff, at the time of the death of the horse, held security upon the horse for the indebtedness due to him from Brooks. The defendant, in its answer, had alleged the loan by the plaintiff to Brooks, and the giving of a chattel mortgage upon the horse in question; and it was competent for the plaintiff to prove that the security thus referred to remained "unsatisfied and unpaid," to the extent of $50, which is the amount awarded by the referee. The case differs from Thomas v. Insurance Co., 12 N. Y. St. Rep. 738.

3. Evidence was given that the horse died in November, 1891, after receiving injuries at the railroad crossing of the Delaware & Hudson Canal Company. Immediately after the injuries, information thereof was communicated to Mr. Fisher, the agent of the defendant, who went with a veterinary surgeon to see the horse, and to take charge of the horse, and the agent continued to visit the horse every day until he died, on the 23d day of November; and, after the death of the horse, Fisher furnished blank proofs of death to Brooks, and they, together, went to the defendant's attorney's office, and the proofs, after being made out, were left with the agent of the defendant,

having been filled out by its attorney, who "was the man that done the business all the way through." The proofs were retained by the defendant, and, in the answer of the defendant, it is admitted that about December 1, 1891, "defendant was notified of the death of said horse; that, about the same day, papers purporting to be proofs of loss were given to this defendant, which said defendant still retains." We think the proof relating to the circumstances attending the making out of the proofs, and delivery of them to the defendant, were properly received, and that the court properly overruled the objection that "there is no proof of any proofs having been submitted to this company." Prior to the commencement of this action, application was made to the defendant in respect to the loss claimed to have been sustained, and in reply to the application an officer of the defendant wrote a letter on March 24, 1892, in which it was stated that the company had "once decided against the claim, as being one of gross and willful carelessness," although the officer writing the letter volunteered the statement in the following language: "I shall advocate its payment." We think no error was committed in receiving the letter in evidence, as it tended to corroborate the evidence already before the referee, to the effect that proofs had been submitted, and to establish the fact that the defendant had refused to make payment of the claim before suit brought.

4. The circumstances attending the injuries of the horse, and the cause of its death, were fully detailed in the evidence, and, after considering them, the referee, upon the evidence relating to that subject, found "that such injury to said horse was caused by negligence of the president, managers, and company of the Delaware & Hudson Canal Company, and without any neglect or carelessness on the part of the said John T. Brooks, who was driving said horse at the time of said injury; that at the same time the harness and wagon of said Brooks were broken and injured by the negligence of said company." We think the evidence warranted the finding made by the referee. It being a question of fact, upon which there was some evidence, we are not disposed to disturb the conclusion reached by the referee in that regard. Nor are we inclined to hold that the fact that Brooks presented a claim to the railroad company for damages sustained by reason of its negligence in injuring his horse, harness, and wagon, and gave a release to the railroad therefor, furnishes a defense to the defendant. It had issued its certificate of indemnity, and entered into a contract to pay in case of the death of the horse, if not "caused by the willful neglect or carelessness;" and, as the injury and death of the horse were caused without the negligence or carelessness of plaintiff or Brooks, the obligation of the defendant assumed in its certificate so held by the plaintiff at the time of the death of the horse should be enforced against the defendant. It does not appear from the evidence that the plaintiff aided Brooks in presenting his claim to the railroad company, or in obtaining a settlement with it, for the damages which he had sustained, or in any way consented to a discharge of the mortgage which he held against the property, or to a liquidation of the certificate which was collateral thereto; and in our opinion the evidence fails to establish any ground upon which the

plaintiff should be prevented from a recovery upon the contract entered into by the defendant, and held by the plaintiff at the time of the death of the horse. Hathaway v. Insurance Co., 134 N. Y. 409, 32 N. E. 40; Kellogg v. Railroad Co., 79 N. Y. 77; Winne v. Insurance Co., 91 N. Y. 192; Dakin v. Insurance Co., 77 N. Y. 600. It is apparent from the pleadings and from the evidence, as well as the findings of the referee, that the defendant had notice of the assignment of the certificate to the plaintiff, and all his interest therein, prior to the death of the horse, and it appears that no act of the plaintiff has occurred which should deprive him of the interest acquired by him in the certificate. After the assignment the obligation of the defendant ran to the plaintiff, and he cannot be deprived of his interest in the certificate of insurance without his consent. Cromwell v. Insurance Co., 44 N. Y. 42. Judgment affirmed, with costs. All concur.